CID ET AL., PLAINTIFFS AND APPELLANTS, *v.* C. PÉREZ ALVAREZ, LTD., DEFENDANT AND APPELLEE.

APPEAL from the District Court of San Juan in an Action of Unlawful Detainer.

No. 2587.—Decided November 20, 1922.

LEASE—OPTION—EXTENSION—NOTICE.—When a lease contract with an option for an extension in favor of the lessee contains no provision for notice to the lessor of the lessee's election to extend the term, the lessee is not required to give express notice of such election, which may be deduced from the acts of the parties.

The facts are stated in the opinion.

*Messrs. C. Coll Cuchí, R. Rivera Zayas* and *G. Cruzado Silva* for the appellants.

*Mr. S. Suau* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

We quite agree with counsel for appellants, plaintiffs below in an action of unlawful detainer, that the only question involved herein is whether or not under the terms of the lease an express manifestation of an intention on the

part of the lessee to exercise the option of extension was required.

For the purpose of this opinion it may be conceded, without holding, that such option was to be exercised before the expiration of the principal term and that the mere failure to vacate immediately on the day of such expiration was not a sufficient notice of an intention to make use of the privilege of extension. To what extent the authorities cited in the brief sustain these last-mentioned propositions need not, therefore, be determined at this time. None of them seem either to hold or to imply that any particular form of notice in writing or otherwise is required.

The original agreement between the parties to the present controversy provides that "the term of this lease is three years, to run from the 1st of August until the 31st of July, 1921, to be extended for two years more, if convenient to" lessee or its successors in interest.

This instrument also contains a clause which reads thus:

"The lessors shall pay for all repairs to the house whenever they may become necessary by reason of *vis major* or the lapse of time, as well as for the general sanitary plumbing, and the lessee shall pay for the repairs to the water-closets and faucets and also for the water consumed. The lessors shall pay the taxes imposed upon the house leased in this contract. The lessee shall preserve the property for the use to which it is destined, but is authorized to carry on therein whatever works it may see fit, and at the termination of the lease the lessee shall restore it to the condition in which it was received, unless the lessors accept the improvements made by the lessee to remain for the benefit of the property."

On May 11, 1921, Mrs. Cid, in her own behalf and in the name of her two daughters, "Doña Marta Cid, of age, married, property owner, now residing in Hamburg, Germany, and Doña Julia Cid, of age, married, property owner and now residing in New York," appeared with the managing partner of the lessee before a notary public and executed a formal contract containing the following clauses:

"Third: The firm of C. Pérez Alvarez, Ltd., hereby agrees that before the expiration of the lease of house No. 95 San Francisco, or Salvador Brau, Street, it will close at its expense the doors which communicate with house No. 97 now open in the party wall of the two houses, and that an architect, an engineer or a master carpenter designated by Julia Pastrana, who will be paid by the firm of C. Pérez Alvarez, Ltd., shall be present and direct the work of closing the said doors.—Fourth: The firm of C. Pérez Alvarez, Ltd., hereby binds itself to assume all liability that may arise from the opening as well as the closing of said doors in relation to the owner of the adjoining house No. 97 on Salvador Brau Street, and to pay any indemnity that may be exacted by the said owner.—Fifth: The parties hereto, Julia Pastrana and Carmelo Pérez Alvarez, in their respective capacities, set forth and agree as follows: That for the unexpired term of the lease contract existing between them the lessee, C. Pérez Alvarez, Ltd., shall pay for all ordinary minor repairs, such as changing of some metal sheets, stopping leaks, changing some boards and other similar materials, and in case of the replacing of many boards or sheets of metal the work shall be done on an agreed estimate by the lessor and lessee, the cost of the materials to be paid in equal parts by the lessor and the lessee. And the repairs of greater importance that may be necessary on account of meteorological accidents, such as a cyclone, a flood, a hurricane, the collapse of walls, roofs, etc., shall be paid for exclusively by the lessor."

The testimony of Mrs. Cid and of the managing partner at the trial plainly shows that these modifications of the terms of the original agreement were made at the instance of Mrs. Cid in contemplation of a trip to Europe, and not only for the purpose of settling the question of responsibility for the openings made by the lessee in the party wall, but also in order to relieve Mrs. Cid from the responsibility and annoyance of attending to minor repairs during the period of her absence. It is conceivable, perhaps, that the provision for the naming by the lessors of an architect, under whose supervision the party wall, before the expiration of the lease, was to be restored to its former condition, referred to the original term, without taking into considera-

tion the privilege of extension, although the fact that no architect was named is a most significant circumstance indicating the construction placed upon the clause in question by Mrs. Cid at the time. But no such conclusion can be drawn from the fact that after two years and ten months of a three year lease had elapsed the lessors sought and obtained a formal release from liability for ordinary repairs made necessary by the lapse of time, with elaborate provisions not only for the stopping of leaks and the replacing by the tenant of an occasional board or sheet of metal, but also for action on the part of the landlord in the event of more serious or extensive deterioration. Simply to assume that the contemplated European travel was to be a flying trip by fast steamer, and that all these precautions were taken in order to cover a period of a few weeks, would amount to a palpable absurdity. The only alternative is to accept the inevitable inference that what the parties must have had in mind was an extension of the lease for a period of two years, pursuant to the provisions thereof, and that such extension was as effectually accomplished by implication as might have been done by the execution of a new instrument.

"It is the general rule that no new lease is necessary upon exercising an option for extension." Note to *Crenshaw-Gary Lumber Company* v. *Norton,* L. R. A. 1916 E, page 1227, at page 1238.

"Where the lease is for a stated term with the privilege to the lessee of extending the term for a further period, and contains no provision for notice to the lessor of the lessee's election so to extend the term, it has been held that the lessee is not required to give express notice to the lessor before the expiration of the first period of his election to extend the term." 16 R. C. L., page 893, sec. 397.

In the absence of any citation of authority to the contrary, we are content to abide by the rule referred to in the text last quoted.

The judgment appealed from must be

*Affirmed.*

Chief Justice Del Toro and Justice Aldrey concurred.

Justices Wolf and Franco Soto took no part in the decision of this case.